# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

NANCY REILLY and RON REILLY,　*

    **Plaintiffs,**

v.

    　　　　　　　　　　　*Case No:* 2:08-CV-0027-WHA

ALFA MUTUAL INSURANCE COMPANY,　*
INC., ALFA BUILDERS INC., et al,　*

    **Defendants.**　　　　*

## NOTICE OF REMOVAL

Come now the defendants designated as *ALFA MUTUAL INSURANCE COMPANY, INC. and ALFA BUILDERS, INC.*, pursuant to 28 U.S.C. §§ 1332 and 1441 *et seq.*, and hereby present this Notice of Removal of the instant action from the Circuit Court of Montgomery County, Alabama, to the United States District Court for the Middle District of Alabama, Northern Division, and further show unto the Court the following:

1.    On November 21, 2007, plaintiffs commenced an action in the Circuit Court of Montgomery County, Alabama, captioned *Nancy Reilly and Ron Reilly v. ALFA Mutual Insurance Company, Inc. and ALFA Builders, Inc., et al*, by filing a Complaint (Exhibit #1).

2.    The Complaint alleges in paragraphs #1 and #2 that plaintiffs are residents of the State of Georgia and in paragraphs #3 and #4 that said defendants are corporations whose principal place of business is located in Montgomery County, Alabama.

3.    Defendants designated as ALFA Mutual Insurance Company, Inc., and ALFA Builders, Inc., seek removal pursuant to the Diversity of Citizenship provisions under 28 U.S.C. § 1332(a)(1) and 1332(c)(1) as well as the provisions of 28 U.S.C. § 1441(b).

4.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) as service of process was perfected on defendants on December 14, 2007.

5.      In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Montgomery County, Alabama.

6.      A copy of this Notice of Removal is also being served upon counsel for plaintiffs.

7.      Copies of all process, pleadings and orders served upon defendants in the state court action are attached collectively as Exhibit #2.

**WHEREFORE, PREMISES CONSIDERED**, defendants designated as ALFA Mutual Insurance Company, Inc. and ALFA Builders, Inc., remove this action from the Circuit Court of Montgomery County, Alabama, to this Honorable Court and request that this Court take jurisdiction of this civil action to the exclusion of any further proceedings in state court.

Respectively submitted,

Don G. DeCoudres
Attorney for Defendants
 ALFA Mutual Insurance Company, Inc.
ALFA Builders, Inc.

**OF COUNSEL**
P.O. Box 36988
Birmingham, Alabama 35236
Telephone:      (205) 988-5463
General Fax:    (205) 988-9538
Direct Fax:      (866) 819-6716
Atty Code:      DEC002 / ASB-7867-D56D
E-mail:            Don.DeCoudres2@thehartford.com

## CERTIFICATE OF SERVICE

I, Don G. DeCoudres, do hereby certify to this Court that I have, on January 9, 2008, served a copy of the above and foregoing Notice of Removal upon the following counsel involved in this proceeding by electronic filing and/or placing same in the U.S. mail, first-class and postage prepaid:

Mr. W. Todd Harvey
Mr. Peter H. Burke
Burke, Harvey & Frankowski, LLC
One Highland Place
2151 Highland Place
Birmingham, Alabama  35205

OF COUNSEL

# Exhibit 1

# Plaintiffs' Complaint

State of Alabama
Unified Judicial System



**SUMMONS - CIVIL**

Case Number ___*CV-2007-1844*___

Form C-34 Rev. 2/79

ID YR Number

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

<u>Nancy & Ron Reilly</u>        v.        <u>ALFA Mutual Insurance Company, Inc. and ALFA Builders, Inc.</u>
       **PLAINTIFF**                                    **DEFENDANT**

NOTICE TO: <u>ALFA Mutual Insurance Company, Inc., c/o H. Al Scott</u>

<u>2108 East South Boulevard, Montgomery, AL 36116</u>
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A
COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO
THE PLAINTIFF'S ATTORNEY **W. Todd Harvey**, WHOSE ADDRESS IS: **Burke Harvey & Frankowski, LLC, One
Highland Place, 2151 Highland Avenue, Suite 120, Birmingham, AL 35205.** THIS ANSWER MUST BE MAILED OR
DELIVERED WITHIN **30** DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A
JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN
THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐     TO ANY SHERIFF OR ANY PERSON AUTHORIZED by either rules 4.1(b)(2) or 4.4(b)(2) of the Alabama
      Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this
      action upon defendant.

☐✖     This service by certified mail of this summons is initiated upon the written request of PLAINTIFF pursuant to
      Rule 4.1(c) of the Alabama Rules of Civil Procedure.

___*12/3/07*___                                    ___Melissa Pittman___
DATE                                                           CLERK/REGISTER

By: _____

**RETURN ON SERVICE:**

☐     [U.S. Postal Service™ CERTIFIED MAIL™ RECEIPT — Domestic Mail Only; No Insurance Coverage Provided. For delivery information visit our website at www.usps.com]

☐     _____ mons and Complaint to _____
       in _____ County, Alabama

| | |
|---|---|
| Postage $ | 1.82 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees $ | 6.62 |

Postmark Here

DATE
ADDRESS
OF SER

Sent To *Alfa Mutual Ins. Co.*
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, June 2002                    See Reverse for Instructions

SERVER SIGNATURE

TYPE OF PROCESS SERVER

FILED IN CIRCUIT COURT OF MONTGOMERY COUNTY
2007 NOV 21 PM 11:30

State of Alabama
Unified Judicial System



**SUMMONS - CIVIL**

Case Number *CV-2007-1844*

Form C-34 Rev. 2/79

ID YR Number

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

<u>Nancy & Ron Reilly</u>          v.          <u>ALFA Mutual Insurance Company, Inc. and ALFA Builders, Inc.</u>
          **PLAINTIFF**                              **DEFENDANT**

NOTICE TO: <u>ALFA Builders, Inc., c/o H. Al Scott</u>

<u>2108 East South Boulevard, Montgomery, AL 36116</u>
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A
COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO
THE PLAINTIFF'S ATTORNEY <u>W. Todd Harvey</u>, WHOSE ADDRESS IS:   <u>Burke Harvey & Frankowski, LLC, One
Highland Place, 2151 Highland Avenue, Suite 120, Birmingham, AL 35205</u>. THIS ANSWER MUST BE MAILED OR
DELIVERED WITHIN **30** DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A
JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN
THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐      TO ANY SHERIFF OR ANY PERSON AUTHORIZED by either rules 4.1(b)(2) or 4.4(b)(2) of the Alabama
          Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this
          action upon defendant.

☐☒      This service by certified mail of this summons is initiated upon the written request of PLAINTIFF pursuant to
          Rule 4.1(c) of the Alabama Rules of Civil Procedure.

<u>12/3/07</u>
DATE                                              CLERK/REGISTER

By: _____

**RETURN ON SERVICE:**

☐

☐                                                          _____ mons and Complaint to _____

          _____ County,  Alabama

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | 1.80 |
| Certified Fee | | 2.65 |
| Return Reciept Fee (Endorsement Required) | | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.60 |

Postmark
Here

DATE
ADDRESS
OF SERV

Sent To  *ALFA Builders, Inc*
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

PS Form 3800, June 2002                    See Reverse for Instructions

ERVER SIGNATURE

YPE OF PROCESS PROCESSOR



FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2007 NOV 21  AM 11: 30

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA

| | | |
|---|---|---|
| NANCY REILLY and RON REILLY | ) | |
| | ) | |
| **Plaintiffs;** | ) | |
| | ) | |
| vs. | ) | Civil Action No. _CV-2007-1844_ |
| | ) | |
| ALFA MUTUAL INSURANCE | ) | Jury Demand |
| COMPANY, INC., ALFA BUILDERS | ) | |
| INC. and FICTITIOUS PARTY | ) | |
| DEFENDANTS "A," "B," and "C"; | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2007 NOV 21  AM 11:30

## **PLAINTIFFS' COMPLAINT**

COME NOW Plaintiffs, NANCY REILLY and RON REILLY, and for their Complaint against Defendants ALFA MUTUAL INSURANCE COMPANY, INC., ALFA BUILDER'S INC. (hereinafter, "ALFA" or "ALFA Defendants) and Fictitious Party Defendants "A," "B," and "C" allege as follows:

### STATEMENT OF PARTIES

1.      Plaintiff, Nancy Reilly is an individual over the age of nineteen years and a resident of the State of Georgia.  She claims herein for bodily injury resulting from Defendants' negligence, wantonness, and/or recklessness, and seeks recovery in an amount exceeding the minimum jurisdictional limits of this Court.

2.      Plaintiff, Ron Reilly is an individual over the age of nineteen years and is a resident of the State of Georgia.  At all times material to this lawsuit, Ron Reilly was the lawful husband of Plaintiff, Nancy Reilly.  He claims herein for loss of consortium resulting from bodily injuries sustained by his wife, Nancy Reilly, resulting from Defendants' negligence,

wantonness, and/or recklessness, and seeks recovery in an amount exceeding the minimum jurisdictional limits of this Court.

3.    The Defendant, ALFA Mutual Insurance Company, Inc., is and was at all times material hereto, a business entity incorporated and doing business pursuant the laws of the State of Alabama with its principal place of business in Montgomery County, Alabama.

4.    The Defendant, ALFA Builders, Inc., is and was at all times material hereto, a business entity incorporated and doing business pursuant to the laws of the State of Alabama with its principal place of business in Montgomery County, Alabama.

5.    Fictitious party "A" is that individual or entity or those individuals or entities that had any duty and or obligation to invitees, including Plaintiff, Nancy Reilly, to maintain the lobby premises of ALFA's building in a safe condition.

6.    Fictitious party "B" is that individual or entity or those individuals or entities whose negligence and or wanton conduct combined with the negligence and/or wanton conduct of any or all named defendants in causing the injuries alleged herein.

7.    Fictitious party "C" is that individual or entity who owns, leases, rents or has any real or ownership interest in the property wherein the personal injuries occurred.

8.    The identities of fictitious party defendants "A," "B," and "C" are presently unknown to Plaintiffs at this time.  Plaintiffs have with due diligence attempted to ascertain the true and correct identities of fictitious party defendants "A," "B," and "C."  When the identities of any or all fictitious party defendants are ascertained or become known, Plaintiffs will amend their Complaint to join said defendants in accordance with the Alabama Rules of Civil Procedure and/or any applicable order of the Court.

### STATEMENT OF JURISDICTION AND VENUE

9.    Jurisdiction is proper in this Court.

10.    Venue is proper in this Court in that the acts and/or omissions complained of in this complaint occurred in this judicial district and Defendants are residents of this judicial district.

### FACTUAL ALLEGATIONS

11.    On the morning of December 15, 2005, Plaintiff, Nancy Reilly and her co-worker, Doug Gould, arrived to make a sales call on Norman Schlemmer, an ALFA executive at ALFA's Montgomery, Alabama headquarters. At approximately 10:20 a.m., Mrs. Reilly exited the car which in front of the ALFA Insurance building that housed the Real Estate division. The physical address of this building is 8191 Seaton Place, Montgomery Alabama 36116.

12.    Mrs. Reilly proceeded across an ALFA-owned sidewalk which led directly to the public entrance. Though not raining at the time, the sky was still overcast and the ground remained wet. Mrs. Reilly continued to the front entrance of the building. The entrance of the ALFA Real Estate Building consists of two sets of large, heavy glass doors adjacent to a sidewalk. It was through these doors that Mrs. Reilly entered the ALFA Building.

13.    The area between the first set of "outer" glass doors and the set of "inner" glass doors has dark-colored, rubberized flooring which is "molded" with a repeating pattern of 1.5-2 inch circles that are raised approximately 2mm. This flooring created a non-slip surface in this small vestibule area.

14.    Mrs. Reilly was in front of her co-worker, Doug Gould, as she entered the first set of doors to enter this vestibule area. Mrs. Reilly reached with her right hand to pull open the second glass door. When she took a step with her right foot on the flooring of the lobby area, she

3

slipped on the wet flooring and fell forward onto the lobby floor. Mrs. Reilly had no indication that the flooring in the lobby was wet.

15.    In the lobby, at the time of the incident, there was a large reception desk located directly in front of the entrance doors. At this desk, there were at least three agents, servants and/or employees of ALFA and/or fictitious party defendants "A," "B," or "C." Nothing was obstructing the view from the reception desk to the front doors, or to the flooring in front of these doors. These employees would have had or should have had knowledge of the wet conditions outside and of the lobby floor. Notwithstanding this knowledge, ALFA and/or Fictitious Party Defendants "A," "B," or "C" failed to place rugs, doormats or other non-slip devices in this area. No signs or markers were placed in the area to warn invitees of the wet conditions. The agents, servants and/or employees of ALFA and/or of Fictitious Party Defendants "A," "B" or "C" failed to take any action to warn invitees of the dangerous condition or to remediate the dangerous condition.

16.    The impact with the hard surface of the lobby floor caused a laceration of Nancy Reilly's left, supra-orbital area (above her left eyebrow) that caused a gaping horizontal opening above her eye. Further, the impact with the floor caused a displaced fracture of the distal portion of Mrs. Reilly's arm near the wrist, and a possible closed head injury with cervical damage.

17.    Shortly after the fall, Norman Schlemmer of ALFA's Real Estate Division, exited his office. He came out of his office because he was alerted by the screams of the three employees positioned at the lobby desk. Mrs. Reilly required the help of several bystanders to get from the lobby floor to a chair placed nearby. An EMS/911 call was immediately placed. Paramedics performed neurological checks on her at the scene and she was taken by car to a nearby hospital.

18.    Assessment of Mrs. Reilly's injuries at the hospital included a series of x-rays, CAT scans, lab work and examinations to determine the extent of the damages she sustained during the fall. Her left arm was visibly abnormal in its alignment, consistent with a severe, comminuted-type fracture of the left ulnar stylus and the distal metaphysis. The fractures were confirmed by x-ray and temporarily positioned in a splint.

19.    While in the ER, Mrs. Reilly was medicated with intravenous morphine and placed in a treatment bay to await an ER physician to suture the cut on her face, and for the evaluation by an orthopedic physician. Mrs. Reilly's pain was breaking through the opiate-based medications administrated by the ER physician. The pain was beyond anything Mrs. Reilly had ever experienced.

20.    Dr. Joseph Curtis, M.D., reviewed the left arm and wrist radiographs which were sent over from the ER with Nancy. Dr. Curtis states in his office notes, that Nancy Reilly had sustained a class of comminuted fracture, defined by bone-breaks which crush the fractured bones into many small pieces. Dr. Curtis performed a "closed-reduction" of the fracture. This procedure called for him to use fast and deliberate strength to heave on the broken wrist with enough force to overcome the locked muscles, break through the internal clots of blood, and realign the fractured bone-on-bone fragments. This procedure caused Mrs. Reilly a tremendous amount of pain.

21.    On the morning of December 19, 2005, Mrs. Reilly and her husband prepared for Nancy's first follow-up appointment with Atlanta-based orthopedic surgeon, Dr. Allen McDonald, III, M.D., of the Peachtree Orthopedic Clinic. The decision to treat Mrs. Reilly's fracture aggressively, but with conservative measures, was agreed on by the patient and her doctor.

22.     Mrs. Reilly was later referred to orthopedic surgeon Dr. Robert L. Howell, M.D., of Georgia Hand and Microsurgery, PC.  After re-evaluation of her left wrist, Dr. Howell recommended Nancy undergo an *open reduction volar plate fixation* to repair the fracture, reinforce the damaged bone integrity and attempt to preserve the left wrist's ability to pronate and supinate (turn palm-down, and palm-up, respectively).  Mrs. Reilly was informed about the procedure, the risks, and the alternative to the surgery.  In this case, there were no real alternatives to surgery.

23.     Mrs. Reilly underwent the open reduction and internal fixation (ORIF) with titanium-based hardware.  The surgery required two surgeons and took over three hours to perform.  Post-operative care was routine with frequent follow-up visits with Dr. Robert L. Howell.  After the surgery, Mrs. Reilly was unable to drive, to dress herself, to prepare her meals or to attend to her personal hygiene independently.  She required assistance taking her medications.  Fortunately, her husband, Plaintiff Ron Reilly was able to assist her.

24.     Appointments with PT, OT, Dr. Robert Howell (the orthopedic surgeon), various pain specialists, neurologists and other physicians dictated the Reilly's daily schedule for the next 21 months.  During this period, Mrs. Reilly endured 22 replacement castings and nearly 80 therapy appointments.

25.     In November 2006, Dr. Howell evaluated Mrs. Reilly using the Guidelines to the Evaluation of Permanent Impairment (Fifth Edition).  These impairment and disability ratings, demonstrate that Mrs. Reilly suffers significant functional losses from the December 15, 2005 incident.  As for Mrs. Reilly's pain, Dr. Howell stated it was his professional opinion that she will continue to suffer both the pain and dysfunction of her left arm for the rest of her life.

6

26.     Mrs. Reilly began showing signs of a chronic regional pain-syndrome – an irreversible and disabling condition called *Reflex Sympathetic Dystrophy*, or "RSD. RSD is a condition affecting an extremity after a fracture or tissue damage has occurred. The findings associated with RSD include: vasodilation (flushing, temperature changes), shunting of blood (alterations in blood flow due to abnormal constricting of the blood vessels), profuse sweating caused by abnormal response of the nerve which controls the seat glands, and excessive pain response.

27.     On December 15, 2005, ALFA was open to the public and pedestrian traffic was expected and anticipated to traverse the ALFA lobby. It had been raining over the several days leading up to December 15, 2005. Rain caused a volume of standing water to accumulate in the entry way, and this accumulation created a dangerous condition.

28.     Mrs. Reilly was a business invitee, and ALFA had a duty to prevent, repair, or warn of any hazardous conditions on its premises that posed a danger. Obviously, ALFA knew that the water and/or other fluids are a hazard when allowed to accumulate at the public entrance of the ALFA building, as indicated by the unique, non-skid, flooring installed in the vestibule.

29.     ALFA knew, or should have known, that rainwater had a propensity to gather, or migrate to the inner entryway between the main two sets of glass doors and the flooring at the entrance to the lobby. Suspecting as much, ALFA had a duty to inspect this inner entryway area, especially during periods of rain, to assure the area was clear of debris or excessive water. ALFA positioned a reception desk directly in front of the entryway – placing no less than three employees in direct view of the hazard in the lobby – and had a superior opportunity to inspect the hazard potential of the area where Mrs. Reilly fell. It is clear that the known hazard was either not inspected appropriately or, in the alternative, was inspected and not remedied.

7

30.     Mrs. Reilly, on the other hand, had no knowledge of the danger, and was provided with no warnings or notices. In fact, ALFA's act of placing a no-slip surface in the vestibule area, but failing to protect the lobby floor area, created a false sense of security to invitees that the floor of the building was in a safe condition.

### FIRST CAUSE OF ACTION

### NEGLIGENCE

31.     Plaintiffs incorporate by reference each and every allegation of the foregoing paragraphs as if set forth herein.

32.     ALFA and Fictitious Party Defendants "A," "B," and "C" had a duty to all invitees, including Mrs. Reilly, to maintain its premises in a safe condition and to protect said invitees from non-obvious dangers such as water accumulating on slippery tile.

33.     ALFA and Fictitious Party Defendants "A," "B," and "C" breached their duty to Plaintiff, Nancy Reilly, an invitee to their premises, by engaging in the following acts and/or omissions:

(a) Failing to hire, train, and monitor its employees or the management personnel charged with the duty of managing its office building;

(b) Failing to establish effective policies and procedures regarding common area safety;

(c) Failing to establish effective policies and procedures regarding placement of mats and or other protective device on wet tile and/or posting of any signage regarding the slippery condition of the flooring when wet;

(d) Failing to supervise on-site personnel to ensure compliance with policies and procedures regarding common area safety;

8

(e) Failing to implement or follow established policies and procedures regarding the placement of mats and or other protective device on wet flooring; and

(f) Failing to implement and/or follow policies and procedures regarding the posting of any signage or markers warning invitees of the slippery condition of the flooring when wet; and

(g) Such other particulars as the evidence may show.

34.    As a direct and proximate result of the negligent and/or wanton conduct of ALFA and Fictitious Party Defendants "A," "B," and "C," Plaintiff Nancy Reilly has suffered severe personal injuries that are permanent in nature as described herein.

WHEREFORE, Plaintiff, Nancy Reilly, seeks from named and fictitious party Defendants, compensatory damages in amount according to proof at trial and all other such relief as to which she may be entitled.

## SECOND CAUSE OF ACTION

## WANTONNESS AND DEMAND FOR PUNITIVE DAMAGES

35.    Plaintiffs incorporate by reference each and every allegation of the foregoing paragraphs as if set forth herein.

36.    ALFA and Fictitious Party Defendants "A," "B," and "C" had a duty to all invitees, including Mrs. Reilly, to maintain its premises in a safe condition and to protect said invitees from non-obvious dangers such as water accumulating on slippery tile.

37.    ALFA and Fictitious Party Defendants "A," "B," and "C" breached their duty to Plaintiff, Nancy Reilly, an invitee to their premises, by engaging in the following acts and/or omissions that constitute wanton, reckless and/or intentional conduct:

(a) Failing to hire, train, and monitor its employees or the management personnel charged with the duty of managing its office building;

9

(b) Failing to establish effective policies and procedures regarding common area safety;

(c) Failing to establish effective policies and procedures regarding placement of mats and or other protective device on wet tile and/or posting of any signage regarding the slippery condition of the flooring when wet;

(d) Failing to supervise on-site personnel to ensure compliance with policies and procedures regarding common area safety;

(e) Failing to implement or follow established policies and procedures regarding the placement of mats and or other protective device on wet flooring; and

(f) Failing to implement and/or follow policies and procedures regarding the posting of any signage or markers warning invitees of the slippery condition of the flooring when wet; and

(g) Such other particulars as the evidence may show.

38.    As a direct and proximate result of the wanton, reckless and/or intentional conduct of ALFA and Fictitious Party Defendants "A," "B," and "C," Plaintiff Nancy Reilly has suffered severe personal injuries that are permanent in nature as described herein.

WHEREFORE, Plaintiff, Nancy Reilly, seeks from named and fictitious party Defendants, compensatory and punitive damages in amount according to proof at trial and all other such relief as to which she may be entitled.

## THIRD CAUSE OF ACTION

### LOSS OF CONSORTIUM

39.    Plaintiffs incorporate by reference each and every allegation of the foregoing paragraphs as if set forth herein.

40.    As a direct and proximate result of the negligent, wanton, reckless and/or intentional conduct of named and fictitious party defendants as set forth herein that caused injury

10

to his lawful wife, Nancy Reilly, Plaintiff, Ron Reilly has suffered the following damages injuries:  a loss of consortium, including but not limited to that society and those services ordinarily provided by a wife to her husband and theretofore were provided by Nancy Reilly to Ron Reilly.

WHEREFORE, the Plaintiff, Ron Reilly, seeks from named and fictitious party defendants, compensatory and punitive damages according to proof at trial and all other such relief as to which he may be entitled.

Respectfully Submitted,

W. Todd Harvey
ASB # asb-3215-e64w
Peter H. Burke
ASB # asb-1992-k74p

OF COUNSEL:

Burke Harvey & Frankowski, LLC
One Highland Place
2151 Highland Place
Birmingham, Alabama 35205
(205) 930-9091
(205) 930-9054 (fax)
tharvey@bhflegal.com
pburke@bhflegal.com

11

## **JURY DEMAND**

Plaintiffs hereby respectfully request and demand that all claims set forth in Plaintiffs'

Complaint be tried by a struck jury.

W. Todd Harvey
Of Counsel

## CERTIFICATE OF SERVICE

Pursuant to Alabama Rule of Civil Procedure 4(i)(2), please serve defendants by certified mail as follows:

ALFA Mutual Insurance Company, Inc
C/O H. Al Scott
2108 East South Boulevard
Montgomery, Alabama 36116

ALFA Builders, Inc.
C/O H. Al Scott
2108 East South Boulevard
Montgomery, Alabama 36116

13

# Exhibit 2

# State Court Pleadings

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA

| | | |
|---|---|---|
| NANCY REILLY and RON REILLY | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | Civil Action No. *CV-2007-1844* |
| | ) | |
| ALFA MUTUAL INSURANCE | ) | Jury Demand |
| COMPANY, INC., ALFA BUILDERS | ) | |
| INC. and FICTITIOUS PARTY | ) | |
| DEFENDANTS "A," "B," and "C"; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANTS ALFA MUTUAL INSURANCE COMPANY AND ALFA BUILDERS, INC.

COME NOW Plaintiffs, NANCY REILLY and RON REILLY and serve upon Defendants, ALFA MUTUAL INSURANCE COMPANY, INC. and ALFA BUILDERS, INC. the following interrogatories:

### INSTRUCTIONS

Pursuant Alabama Rule of Civil Procedure 33, Plaintiffs hereby request that Defendants answer the following interrogatories, separately and completely, in writing and under oath within thirty (30) days from the date of service thereof.

These interrogatories are continuing and if at any time after Defendants have answered these interrogatories, new or additional information relating to any of these interrogatories comes to the attention of Defendants within the scope of the Alabama Rules of Civil Procedure then Defendants are required to furnish such new or additional information to Plaintiffs and to file and serve upon counsel for Plaintiffs supplemental answers to these interrogatories.

If Defendants cannot answer any of the following interrogatories in full after exercising due diligence to secure the information to do so, then state and answer to the extent possible, specifying Defendants' inability to answer the remainder.

## DEFINITIONS

(A)    The terms "defendant," defendants," "you," "your" or any synonym thereof, are intended to and shall embrace and include the defendants designated as ALFA Mutual Insurance Company, Inc. and ALFA Builders, Inc. (ALFA Defendants) in Plaintiff's Complaint for Damages unless otherwise specified.  In addition, these terms are meant specifically to incorporate and encompass, agents, servants, employees, representatives, private investigators, attorneys and others who are in possession of or may have obtained information for or on behalf of Defendants, individually and collectively.

(B)    The terms "identify" or "identity," when used in reference to a natural person, shall mean to state the full name, the present or last known home and business addresses, home and business telephone numbers, their employer and job title and present whereabouts for each such person.

(C)    The terms "identification," "identify," or "identity," when used in reference to a corporation or other business entity, shall mean to state the full legal name, state or incorporation or organization, address of the home office, and of the principal place of business.

(D)    The terms "identify" or "identity," when used in reference to a document or file shall mean to state its author, the manner and date of time period in which it originated, was developed or kept, its original location, its present location, and all persons who have been custodian of the document or file.  Such identification should be made with a significant level of particularity to enable you to respond to a request to produce same.

(E)     The terms "related to" or "relating to" shall include pertaining to, concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, derogating from, tending not to establish, evidencing, comprising, concerned with, commencing on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including.

(F)     The words "document" or "documents" are used in their broad and liberal sense and shall mean the original (or if the original is not available, the best copy available) of any and all information in tangible or other form and shall include, without limiting the generality of the foregoing, all letters, correspondence, contracts, agreements, memoranda, mechanical and electronic recordings, calendar an diary entries, notes or memoranda of conversations, telephonic or otherwise, and of meetings or conferences, studies, reports, recommendations, quotations, offers, inquires, bulletins, summaries, newsletters, compilations, specifications, maps, charts, blueprints, diagrams, graphs, photographs, pictures, film, videotapes, microfilm, propositions, articles, announcements, newspaper clippings, books, books of account, ledgers, vouchers, cancelled checks, invoices, bills, receipts, opinions, certificates, and writings of any kind, and all other tangible things upon which any handwriting typing, printing, drawings, representation, photostatic or other copy, or other graphic matter, magnetic or electrical impulses, or other form of communication is recorded or produced, including audio and video recordings and computer stored information, whether or not in printer form and all rough drafts and revised drafts (including all handwritten notes or other marks on same), and all other drafts and copies of documents as hereinbefore defined by whatever means made. If multiple copies of a document exist, each copy which is being identified, produced, or identified as a privileged document shall

3

also be produced or so identified. Also to be identified or produced are all documents clipped, stapled, or otherwise attached to all described or requested documents.

(G)     The words "person" or "persons" mean all natural persons ("individual" or "individuals") and all entities including without limitation: corporations, companies, partnerships, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus or boards.

(H)     A "communication" shall mean every manner or means of disclosure, transfer, or exchange of information whether written, oral, face-to-face or by telephone, mail, personal delivery, electronic, and/or otherwise.

(I)     The words "and" as well as "or" shall be constructed either conjunctively or disjunctively as necessary to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

(J)     "All" includes the word "any," and "any" includes the word "all". "Each" includes the word "every" and "every" includes the word "each."

(K)     The word "plaintiff" or "plaintiffs" refers to and shall be construed to mean Nancy Reilly and/or Ron Reilly, unless so stated in the interrogatory.

(L)     The term "defendants' premises" as set forth in Plaintiffs' Complaint and in these interrogatories should be construed to mean the place where Plaintiff, Nancy Reilly, fell and suffered injury on December 15, 2005.

## INTERROGATORIES

1.    Identify by full name, address and telephone number each and every person including each and every agent, servant and/or employee of Defendants that were in or near the vicinity of the area of Defendants' premises where Plaintiff Nancy Reilly fell on December 15, 2005. For each such agent, servant and/or employee of Defendant, state whether they are still employed by Defendant.

RESPONSE:


2.    Identify by full name, address and telephone number each and every witness including each and every agent, servant and/or employee of Defendants that witnessed Plaintiff Nancy Reilly fall on December 15, 2005. For each such agent, servant and/or employee of Defendant, state whether they are still employed by Defendant.

RESPONSE:


3.    Identify by full name, address and telephone number each and every witness including each and every agent, servant and/or employee of Defendants that spoke with Plaintiff Nancy Reilly after her fall on December 15, 2005. For each such agent, servant and/or employee of Defendant, state whether they are still employed by Defendant.

RESPONSE:


4.    Identify by full name, address and telephone number each and every witness including each and every agent, servant and/or employee of Defendant that saw or otherwise inspected the area of Defendants' premises either before or after Plaintiff, Nancy Reilly, fell on December 15, 2005. For each such agent, servant and/or employee of Defendant, state whether they are still employed by Defendant.

RESPONSE:

5.    State whether any photographs, drawings, videotapes or other graphic depictions were made of the area of Defendants' premises involved in the incident of December 15, 2005. If so, identify by name, address and telephone number the individual who has custody and/or control of them.

RESPONSE:


6.    State whether any photographs, drawings, videotapes or other graphic depictions were made of Plaintiff Nancy Reilly and/or her injuries as described in Plaintiffs' Complaint. If so, identify by name, address and telephone number the individual who has custody and/or control of them.

RESPONSE:


7.    State whether any witness statements were taken by Defendants or at Defendants' direction of any witness, including Plaintiffs Nancy Reilly and/or Ron Reilly, with knowledge of the events and/or circumstances giving rise to Plaintiffs' allegations in this lawsuit. If so, identify by name, address and telephone number of each witness whose statement was taken.

RESPONSE:


8.    State whether any incident and/or accident report was completed for the incident of December 15, 2005 in which Plaintiff Nancy Reilly was injured. If so, identify by name, address and phone number the individual(s) who has custody and control of said report.


RESPONSE:


9.    State and describe with specificity any and all procedures or protocols in effect on December 15, 2005 that in any way concern, relate or pertain to the maintenance of Defendants' premises at issue in this lawsuit and described in Plaintiffs' Complaint.

RESPONSE:

6

10.    Identify by name, address and phone number each and every individual and/or entity that had any duty and/or responsibility to maintain Defendants' premises including the removal of water from flooring of the premises during the year 2005.

RESPONSE:


11.    Identify by name, address and phone number any individual who made any written or verbal complaint to Defendants or any agent, servant or employee of any Defendant concerning the condition of the flooring on Defendants' premises on December 15, 2005.

RESPONSE:


12.    For each such individual identified in response to Plaintiff's Interrogatory eleven (11), state with specificity the time and nature of their complaint(s).

RESPONSE:


13.    Identify by name, address and phone number any individual who fell on Defendants' premises during the year 2005 as a result of water or other substance on the flooring of Defendants' premises.

RESPONSE:


14.    For each such individual identified in response to Plaintiffs' Interrogatory thirteen (13), state with specificity the date, time and location of each "incident" and state whether an incident and/or accident report was completed.

RESPONSE:

15.    State and describe with specificity any policy and/or procedure of Defendants in effect on December 15, 2005 that in any way concerns, relates or pertains to the removal of water from the flooring of Defendants' premises.

RESPONSE:


16.    Identify each and every individual by name, address and phone number including any agent, servant and/or employee of any Defendant who removed water or any other substance from the flooring of Defendants' premises after Plaintiff Nancy Reilly suffered a fall on December 15, 2005. For each such agent, servant and/or employee of Defendant, state whether they are still employed by Defendant.

RESPONSE:


17.    State the exact date and time the area of Defendants' premises at issue in this lawsuit where Plaintiff Nancy Reilly fell was last inspected by any agent, servant or employee of any Defendant or anyone working on behalf of any Defendant prior to said fall and identify by name, address and telephone number the individual who performed said inspection.

RESPONSE:


18.    State the exact date and time the flooring in the area of Defendants' premises at issue in this lawsuit was cleaned, "waxed," "buffed," or "shined" prior the time Plaintiff Nancy Reilly fell and identify by name, address and telephone number the individual who performed said function(s).

RESPONSE:


19.    State the exact date and time that any maintenance was performed to the area of Defendants' premises at issue in this lawsuit prior to the time Plaintiff Nancy Reilly fell and state and describe with specificity the nature of the maintenance performed.

RESPONSE:


8

20.    State and describe with specificity the kind and nature of the flooring in the "vestibule" area located between the outer and inner doors of Defendants' premises as described in Plaintiffs' Complaint that existed on December 15, 2005.

RESPONSE:


21.    State and describe with specificity the kind and nature of the flooring in the lobby of Defendants' premises in the area where Plaintiff Nancy Reilly sustained her fall on December 15, 2005.

RESPONSE:


22.    State and describe with specificity the kind and nature of any floor covering on the flooring of the "vestibule" area located between the outer and inner doors of Defendants' premises as described in Plaintiffs' Complaint that existed on December 15, 2005.

RESPONSE:


23.    State and describe with specificity the kind and nature of any floor covering on the flooring in the lobby of Defendants' premises that was present on or near the area where Plaintiff Nancy Reilly sustained her fall on December 15, 2005.

RESPONSE:


24.    With respect to floor coverings described in Defendants' responses to Plaintiffs' Interrogatories twenty-two (22) and twenty-three (23), state the exact date and time that said floor covering(s) was put or laid down in the "vestibule" area and/or the lobby area where Plaintiff fell prior to December 15, 2005.

RESPONSE:

9

25.     Identify by name, address and phone number each and every agent, servant or employee of any Defendant who was present in the lobby of Defendants' premises on the date and at the time Plaintiff Nancy Reilly suffered a fall as described in Plaintiffs' Complaint.

RESPONSE:


26.     State and describe with specificity the weather conditions that existed at the location of Defendants' premises during the week prior to December 15, 2005.

RESPONSE:


27.     State and describe with specificity including the amount of water and/or other substance(s) on the flooring of Defendants' premises in the location where Plaintiff Nancy Reilly suffered a fall immediately prior to and immediately following the incident at issue in this lawsuit and described in Plaintiffs' Complaint.

RESPONSE:


28.     Identify by name, address, telephone number and job title, each and every individual who aided in or provided information, documents or tangible things to aid in the response to Plaintiffs' interrogatories.

RESPONSE:


29.     Identify by name, address, telephone number and job title, each and every individual who provided any documents or tangible things produced in response to Plaintiffs' Request for Production of Documents.

RESPONSE:

30.     Identify by name, address and telephone number any individual and/or entity that had any ownership interest in Defendants' premises on December 15, 2007.

RESPONSE:


31.     State whether Plaintiffs have properly named ALFA Mutual Insurance Company, Inc. and ALFA Builders, Inc. in Plaintiffs' Complaint.  If the response to the interrogatory is "no" state how these entities should be named in Plaintiffs' Complaint.

RESPONSE:


32.     State whether Defendants' contend that any other individual or entity bears any responsibility or liability for Plaintiffs' damages, or any portion thereof, as described in Plaintiffs' Complaint.  If so, identify by full name, address and telephone number each such individual and/or entity and state with specificity why Defendants so contend.

RESPONSE:


Respectfully submitted:

W. Todd Harvey
Attorney for Plaintiff

11

OF COUNSEL:

Peter H. Burke
Burke Harvey & Frankowski, LLC
One Highland Place
2151 Highland Place
Birmingham, Alabama 35205
(205) 930-9091
(205) 930-9054 (fax)
tharvey@bhflegal.com
pburke@bhflegal.com

## CERTIFICATE OF SERVICE

   Please serve Plaintiffs' Interrogatories by certified mail along with Plaintiffs' Complaint pursuant to Alabama Rules of Civil Procedure 4(i)(2).

Respectfully submitted,

W. Todd Harvey
Of Counsel

● ●

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| NANCY REILLY and RON REILLY | ) |
| | ) |
| **Plaintiffs;** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| ALFA MUTUAL INSURANCE | ) |
| COMPANY, INC., ALFA BUILDERS | ) |
| INC. and FICTITIOUS PARTY | ) |
| DEFENDANTS "A," "B," and "C"; | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

Civil Action No. $CV$-$2007$-$1844$

**Jury Demand**

2007 NOV 21  AM 11: 3

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

---

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## TO DEFENDANTS ALAFA MUTUAL INSURANCECOMPANY, INC
## AND ALFA BUILDERS, INC.

COME NOW Plaintiffs, NANCY REILLY and RON REILLY and serve upon

Defendants, ALFA MUTUAL INSURANCE COMPANY, INC. and ALFA BUILDERS, INC.

the following Requests for Production:

### INSTRUCTIONS

Pursuant to Alabama Rule of Civil Procedure 34, Plaintiffs hereby requests that

Defendant respond to the following Requests for Production, separately and completely by

producing responsive documents in accordance therewith within thirty (30) days from the date of

service thereof.

Defendants should make production responsive to these requests within the time allotted

by Alabama Rule of Civil Procedure 34 at the offices of Burke Harvey & Frankowski, LLC,

located at One Highland Place, 2151 Highland Avenue, Suite 120, Birmingham, Alabama 35205.

These Requests for Production of Documents are continuing and if, at any time after

Defendants have produced the requested documents or otherwise responded thereto, further

documents or other evidence identified and requested come into Defendants' possession and control, then Defendants are requested to respond by producing said documents at the aforesaid location within ten (10) days of acquiring same but in no event later than ten (10) days prior to the date of trial.

If any document or tangible thing requested was at any time, but is not now, in Defendants' possession or custody or subject to Defendants' control, please state what disposition was made of such document or tangible thing and when such disposition occurred.

If Defendants decline to produce any document requested on the basis of any privilege known in the law, then at the time of production designated herein, as to each such document, please provide the following information pertaining to such document:

(1)     Its date or if not dated, the date it was prepared or received:

(2)     The type of document (e.g., letter, memorandum, telegram, chart, photograph, e-mail, etc.);

(3)     The author and the address; including the names of all persons receiving a copy;

(4)     Its present location;

(5)     The identity of the individual or person presently custodian or custodians thereof;

(6)     The number of pages thereof;

(7)     The identity of each person who received a copy of such document and the relationship of such person to you;

(8)     Whether such documents contains or related to facts or opinions, or both; and

(9)     The nature of privilege or other grounds for refusing production (e.g., work product,) of such document and the circumstances relied upon to support that claim.

## DEFINITIONS

(A)     The words "document" or "documents" are used in the broad and liberal sense and shall mean the original (or, if the original is not available, the best copy available) of any and all information in tangible or other form and shall include, without limiting the generality of the foregoing, all letters, correspondence, contracts, agreements, memoranda, mechanical and electronic recordings, calendar and diary entries, notes or memoranda of conversations, telephonic or otherwise, and of meetings or conferences, studies, reports, recommendations, quotations, offers, inquiries, bulletins, summaries, newsletters, compilations, specifications, maps, charts, blueprints, diagrams, graphs, photographs, pictures, film, videotapes, microfilm, proposition, articles, announcements, newspaper clippings, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, receipts, opinions, certificates, and writings of any kind, and all other tangible things upon which any handwriting, typing, printing, drawings, representation, photo static or other copy, or other graphic matter, magnetic or electrical impulses, or other form of communication is recorded or produced, including audio and video recordings and computer-stored information, whether or not in printout form, and all rough drafts and revised drafts (including all handwritten notes or their marks on same), and all other drafts and copies of documents as hereinbefore defined by whatever means made.  If multiple copies of a document exist, each copy which is in any way not completely identical to a copy which is being identified, produced, or identified as a privileged document shall be produced and so identified.  Also to be identified or produced are all documents clipped, stapled or otherwise attached to all described or requested documents.

(B)     "All" includes the word "any," and "any" includes the word "all." "Each" includes the word "every" and "every" includes the word "each."

3

(C)     The terms "Defendant," "Defendants," "you." "your" or any synonym thereof, are intended to and shall embrace and include the defendants designated as ALFA Mutual Insurance Company, Inc. and/or ALFA Builders, Inc. in the Plaintiff's Complaint for Damages unless otherwise specified.    In addition, these terms are meant specifically to incorporate and encompass, agents, servants, employees, representatives, private investigators, attorneys and others who are in possession of or may have obtained information for or on behalf of the Defendant, individually and collectively.

(D)     A "communication" shall mean every manner or means of disclosure, transfer, or exchange of information whether in writing, oral, face-to-face, by telephone, mail, personal delivery, and electronic mail or otherwise between two or more persons or entities.

(E)     The terms "identify" or "identity," when used in reference to a document or file shall mean to state its author, the manner and date of time period in which it originated, was developed or kept, its original location, its present location, and all persons who have been custodian of the document or file.  Such identification should be made with a significant level of particularity to enable you to respond to a request to produce same.

(F)     The words "related to" or "relating to" shall include pertaining to, concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, derogating from, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constitution, or including.

(G)     The words "person" or "persons" mean all natural persons ("individual" or "individuals") and entities including without limitation: corporations, companies, partnerships,

4

limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus, or boards.

(H)    The words "<u>and</u>" as well as "<u>or</u>" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these Requests for Production any information that might otherwise be construed to be outside their scope.

(I)    "<u>All</u>" includes the word "<u>any</u>," and "<u>any</u>" includes the word "<u>all</u>." "<u>Each</u>" includes the word "<u>every</u>" and "<u>every</u>" includes the word "<u>each</u>."

(J)    The word "<u>Plaintiff</u>" or "<u>Plaintiffs</u>" refers to and shall be construed to mean Nancy Reilly and/or Ron Reilly unless so stated in the request.

(K)    The term "<u>defendants' premises</u>" as set forth in Plaintiffs' Complaint and in these interrogatories should be construed to mean the place where Plaintiff, Nancy Reilly, fell and suffered injury on December 15, 2005.

## REQUESTS FOR PRODUCTION

1.    Produce each and every insurance contact or policy this is or may be liable to provide coverage for the injuries and damages alleged in Plaintiff's complaint.

RESPONSE:


2.    Produce each and every accident and/or incident report created by Defendants that in any way concern, relate or pertain to the incident of December 15, 2005 described in Plaintiffs' Complaint.

RESPONSE:


3.    Produce each and every witness statement or transcript of any recorded witness statement including that of Plaintiffs Nancy Reilly and Ron Reilly that in any way concerns relates or pertains to the incident of December 15, 2005 described in Plaintiffs' Complaint.

RESPONSE:


4.     Produce each and every policy and/or procedure of any Defendant that in any way concern relate or pertain to maintenance and/or safety of the "vestibule" and "lobby" areas of Defendants' premises including any plan or procedure for the removal of water from the flooring of these areas.

RESPONSE:


5.     Produce any and all photographs, drawings or other graphic depictions of the area of Defendants' premises where Plaintiff, Nancy Reilly, fell including any such photographs of the area of said premises as it existed on December 15, 2005.

RESPONSE:


6.     Produce any and all videotapes including any security or surveillance videos of the area of Defendants' premises where Plaintiff, Nancy Reilly, fell that were made during December, 2005.

RESPONSE:


7.     Produce a form copy of any and all documents including "inspection reports" used by Defendants for inspection of Defendants' premises for maintenance and/or safety.

RESPONSE:


8.     Produce any and all documents including completed "inspection reports" that in any way concern relate or pertain to any inspection of Defendants' premises during December, 2005.

RESPONSE:


9.     Produce any contract, agreement or other document evidencing agreement between any Defendant with any individual or entity for the maintenance of Defendants'

6

premises including the cleaning and/or removal of water from the flooring of Defendants' premises.

RESPONSE:


10.    Produce any and all policies and procedures for dealing with "incident" and/or "accidents" to individuals such as Plaintiff Nancy Reilly while on Defendants' premises.

RESPONSE:


11.    Produce any and all "incident" and/or "accident" reports for Defendants' premises that were completed during the year 2005.

RESPONSE:


12.    Produce any and all correspondence, memos, electronic communications or other communications of Defendants' employees, servants and/or agents that in any way concern relate or pertain to Plaintiff, Nancy Reilly and/or the incident of December 15, 2005 described in Plaintiff's Complaint.

REPSONSE:


13.    Produce any and all written complaints made during the year 2005 by any individual or entity that in any way concern, relate or pertain to any incident or accident involving a fall caused by the presence of water or other substance on the floor Defendants' premises.

RESPONSE:


14.    Produce any documents or items Defendants intend to use as exhibits at the trial of this lawsuit.

RESPONSE:


7

15.    Produce any and all documents that in any way concern relate or pertain to the condition of the flooring in the area of Defendants' premises at issue in this lawsuit and described in Plaintiffs' Complaint.

REPSONSE:


16.    Produce any and all documents that in any way concern the composition of the flooring in the area of Defendants' premises at issue in this lawsuit and described in Plaintiffs' Complaint.

RESPONSE:


17.    Produce any and maintenance and/or inspection schedules for the area of Defendants' premises at issue in this lawsuit and described in Plaintiffs' Complaint.

RESPONSE:


18.    Produce any and all documents including schedules that in any way relate to the cleaning, "waxing," "buffing" or "shining" the flooring in the area of Defendants' premises at issue in this lawsuit and described in Plaintiffs' Complaint.

RESPONSE:


Respectfully submitted:

W. Todd Harvey
Attorney for Plaintiff

8

OF COUNSEL:

Peter H. Burke
Burke Harvey & Frankowski, LLC
One Highland Place
2151 Highland Place
Birmingham, Alabama 35205
(205) 930-9091
(205) 930-9054 (fax)
tharvey@bhflegal.com
pburke@bhflegal.com

## CERTIFICATE OF SERVICE

Please serve Plaintiffs' Interrogatories by certified mail along with Plaintiffs' Complaint pursuant to Alabama Rules of Civil Procedure 4(i)(2).

Respectfully submitted,

W. Todd Harvey
Of Counsel

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602003279
Cashier ID: brobinso
Transaction Date: 01/11/2008
Payer Name: THE HARTFORD
------------------------------------
CIVIL FILING FEE
  For: THE HARTFORD
  Case/Party: D-ALM-2-08-CV-000027-001
  Amount:        $350.00
------------------------------------
CHECK
  Check/Money Order Num: 100312631 6
  Amt Tendered:  $350.00
------------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00

NEW CASE FILING FEE NANCY REILLY ET
AL V. ALFA MUTUAL INS CO


MAIL RECEIPT TO:

DON DECOUDRES

PO BOX 36988
BIRMINGHAM, AL 35236